## Exhibit Index

**Exhibit A – "The Olive Branch" Memorandum**

Plaintiff's formal pre-arrest conferral and waiver-of-liability offer to Defendants, dated Ma 1, 2025.

**Exhibit B – Pre-Litigation Letter Pursuant to Fed. R. Evid. 408**

Confidential settlement communication establishing Defendants' knowledge and opportunity to cure.

**Exhibit C – Judicial Notice Filed June 30, 2025**

Supplemental Judicial Notice submitted in *Polisi v. DeSantis, et al.*, documenting ongoing retaliation and forum closure.

**Exhibit D – CashApp Statement Showing Hotel Charge**

Debit transaction corroborating payment of alleged "stolen" hotel funds used in criminal prosecution.

**Exhibit E – Zero-Balance Receipt from Home2 Suites / Hilton**

Hilton-issued document proving no outstanding balance and full resolution of civil billing matter.

**Exhibit A:**
**"The Olive Branch" Memorandum**
**Plaintiff's formal pre-arrest conferral and waiver-of-liability offer to Defendants, dated May 1, 2025.**

Vincent R. Polisi, II
8297 Champions Gate Boulevard, #113
Champions Gate, FL, 33896
vincent@vincentpolisi.com
(407) 928-0961

The Honorable James Uthmeier
Attorney General of Florida
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
james.uthmeier@eog.myflorida.com

cc:
Scott Matthews, Esq.
Office of the State Attorney, Tenth Circuit
255 N Broadway Ave Fl 2
Bartow, FL 33830-3912
smatthews@sao10.com

Robert Earl Pyle, Esq.
Office of the State Attorney, Tenth Circuit
Drawer Sa, P.o. Box 9000
PO Box 9000
Bartow, FL 33831-9000
rpyle@sao10.com

Brian Haas, Esq.
Office of the State Attorney, Tenth Circuit
255 N Broadway Ave,
Bartow, FL 33830
bhaas@sao10.com

RE: There are three kinds of lies: Lies, Damned Lies, and Statistics
RE: 2025MM-001732-A000-BA

Mr. Attorney General:

As you are aware, it would appear that you and I are on a completely unnecessary collision course with the roles reversed with you being the one being deposed and on the witness stand in federal court, along with Governor DeSantis, despite the qualified and sovereign immunity in 6:25-cv-00256-WWB-LHP Polisi v. DeSantis presently before the US District Court for the Middle District of Florida.

Unfortunately, due to your refusal to confer based on the numerous requests I have sent pursuant to Local Rule 3.01(g), as you have already been notified, I must now move to have Governor DeSantis served by the US Marshals Service, despite my personal request to you to avoid that out of respect for you and the governor.

Now, on to the other purpose of this time wasting communique:

If the criminal actions of the Keystone Cops in the employ of the Saint Cloud Police Department, caught on their own body cams and police reports weren't bad enough…and the incompetence and corruption in the Office of the State Attorney in Osceola County wasn't already documented to your satisfaction (especially after I dismantled them pro se at the Emergency Richardson Hearing for withholding exculpatory evidence) in State v. Polisi,  2023-MM-2683, …and the documented corruption of the judiciary hasn't been sufficient to get your attention in 6:25-cv-00256-WWB-LHP Polisi v. DeSantis (just wait until I get the Osceola County Courthouse in-courtroom camera footage and audio recordings of the ex parte conversations between Judge Stephania Jancewicz and Assistant District Attorney Christopher Hill colluding to induce a plea deal to avoid liability despite the known exculpatory evidence)… I've got yet another opportunity for you to do your job as Florida's chief state legal officer pursuant to Florida Constitution--1968 Revision

Art. IV, § 4(b).

Sadly, there has been yet another unnecessary unconstitutional annoyance by incompetent and corrupt prosecutors, this time spearheaded by the Office of the State Attorney in Polk County, Brian Haas, his underlings, Scott Matthews and Robert Pyle (cc'd above), and a corrupt sheriff's deputy (Deputy Ariel Jimenez) in the employ of everyone's favorite grandstanding hillbilly carnival barker who loves to yap nonstop in front of cameras like a junkyard dog with never ending self aggrandizement…none other than Sheriff Grady Judd.

If you thought the Saint Cloud Police Department was incompetent and corrupt, believe me, they're amateurs by comparison.

In our most recent escapade with corrupt law enforcement officers, further proving that citizens are idiots for "doing the right thing" and that "law enforcement" simply cannot be trusted to enforce laws or protect citizens, it was actually I, who idiotically called them (the Polk County Sheriff's Department) for the purposes of documenting an event before it unnecessarily escalated and to ensure that I wasn't falsely charged (again) for something I didn't do, this time, "theft of hotel services".

The issue at hand: unauthorized charges to my debit card by the Home2Suites Hotel located at 164 Thrive Rd, Davenport, FL 33896 where I was staying at the time, and have stayed at many times before without issue.

No different than the events leading up to State v. Polisi, 2023-MM-2683, the entire event, before, during, and after calling law enforcement is recorded on video, by me.

At the time of the "incident", I called the Polk County Sheriff's Department, patiently waited in the Home2Suites lobby and met with a very pleasant Polk

County deputy, Deputy Cesar (or Cesor?), Badge #9838. I explained the situation with the fraudulent attempts at billing, provided receipts of the debit transactions on my account, and proved that I was paid through the current day. Deputy Cesar spent roughly 30 or so minutes conducting his investigation, spoke with the hotel front desk manager, spoke with me, got my contact information and documentation, and then, when satisfied that there was no fraud by me, departed.

The catalyst and underlying problem: as you are aware, since the events of the false arrest on November 6th, 2023, I have been unconstitutionally denied access to my home, via documented extortion of further false police reports by my lovely wife while I was out on bond pending the criminal trial, and later through the subsequent exclusive use and possession order of my home in the marriage dissolution action. After the false arrest and 9 day false imprisonment without bond on November 6th, 2023, I have been living in a variety of hotels and vacation rentals pending resolution of the now pending trial in the marriage dissolution action, presently scheduled for May 7th, 2025 in Osceola County, as I await final custody determination of my minor daughter, to determine my next move.

As a result, I have become intimately familiar with the illegal practices of hoteliers and the fraudulent games they play once they have a guest's debit or credit card information. As a consumer, what I didn't know two years ago, was that virtually every Hilton, Holiday Inn, etc., is actually an independently owned franchise, similar to McDonald's.

Here's but one (of dozens of) example(s):

In 2024, one Saturday morning while staying at the Holiday Inn Express at 12150 Pioneers Way, Orlando, FL 32832, I woke up to an unauthorized charge of more than $5,000.00 on my Regions commercial debit card. As I'm sure you are aware, hotels bill in advance, not in arrears. They no longer engage in the practice of

sliding your bill under the door and charging you upon vacating. Everything is prepaid.

This is important to remember for this conversation: **Everything is prepaid.**

You can imagine my surprise when I got the email/text notification of a debit for more than $5,000 to my card. In that instance, there was no explanation other than that the "night auditor" had made a mistake and that the funds would be returned in 3-5 business days.

It was at this point, that I sat down with my private banker at Regions and had a long conversation, swore out and notarized an affidavit, and altered my practices when providing hotels access to my debit cards. I also took the liberty of contacting IHG's (International Hotel Group, Inc., who owns the Holiday Inn brand) general counsel, Nicolette Henfrey to inform her of the ongoing illegal Pattern or Practice of debiting transactions at will without authorization by their franchisees (as this wasn't the first instance, it was simply the largest).

After this event, I instituted the policy of only paying for hotel rooms with debit cards that have a "lock" feature that prevents unauthorized transactions. Again, it's important to reiterate that hotel stays are prepaid, not paid in arrears.

And that leads us back to the current entertainment. Several days ago, I received a bizarre spam-like text out of the blue informing me of a "failure to appear". Given the ongoing litigation in both Osceola County and the US District Court for the Middle District of Florida, I'm obviously tuned in to ensuring I don't miss any statutory timelines or notifications from either court.

Upon further investigation, it appears that a summons was issued at the behest of the aforementioned state attorneys predicated on, as fate would have it, yet another

false police report, this time, by Polk County Sheriff Detective Ariel Jimenez, who contacted me after the incident defined above requesting additional documentation, which, being the good law abiding citizen that I am, I happily provided.

After providing all of the documentation, including a paid receipt from Hilton showing a zero balance (attached to this document), Detective Jimenez made the monumental mistake of thinking he was dealing with some low IQ vagrant that he could easily fraudulently entrap and falsely arrest.

After providing all the requested information via text and email, and multiple elongated phone calls, he asked me to come to the Polk County Sheriff's Department for an "interview". At this point, understanding he'd underestimated who he was dealing with and knowing the game at hand, I explained and memorialized in writing, that I would be happy to meet him at the Polk County State Attorney's Office and provide all documentation and answer any questions that the State Attorney had, in person. Other than that, I was invoking my 5th Amendment right to remain silent. He persisted nonetheless until I documented two occasions where he persisted in asking me questions via text after invocation of the 5th Amendment. He then memorialized in writing, after the fact, the he acknowledged my prior invocation of my right to remain silent.

During the communications, I explained that he was going to have to find someone else to entrap and provided him the following video by Regent University School of Law Professor James Duane and Officer George Bruch of the Virginia Beach Police Department which explained the tactics he was trying to use to secure a knowingly false arrest:

https://youtu.be/d-7o9xYp7eE?si=Ew05H2dOieXREGga

Apparently, his fragile ego got bruised and he lost emotional control and decided to

proceed with knowingly false allegations despite the documentation provided. He, too, made the same mistake as the Saint Cloud Police Department and attempted to layer charges that don't even apply, especially given the court order I have sitting in my pocket from Judge Keith Carsten. It appears, that someone in the State Attorney's Office attempted to rein it in and already eliminated multiple charges but still left the "theft of hotel services".

As you are already aware, due to the ongoing corruption, I over document everything to the point that even I would argue that it's neurotic had I not experienced what I've previously experienced with corrupt cops and prosecutors (and judges) over the last 3 decades.

I have taken the liberty of attaching the bill from Hilton previously provided to Deputy Jimenez showing a zero balance owed.

As I repeatedly stated, and documented in writing at the time of and after the event, there isn't now, nor was there ever, any attempt or intent to defraud anyone and if there is something legitimately owed, I am happy to pay it upon proof of claim. To date, neither the local Home2Suite franchisee, nor Hilton Worldwide Holdings Inc., have provided any proof of any money owed, or any theft of services.

In fact, as documented, Hilton says no money is owed, contrary to the local franchisee.

I'd like to gently suggest that it would be a really great idea, and in everyone's best interest, especially the taxpayers who pay all of your salaries, if you would have one of those "ex parte" conversations with your colleagues CC'ed on this letter/ email and kindly inform them as it relates to me that, as Obi-Wan so eloquently said, "These aren't the droids you are looking for. Move along."

Otherwise, as you should painfully be aware of by now, and as the Osceola County Prosecutor, Christopher Hill painfully found out (as I promised him in writing in advance of his knowingly malicious prosecution), there will be no plea deal, we are going to trial and I will be representing myself pro se so there won't be any handshake/wink-wink deals with one of your Bar certified buddies for a plea.

I've got all the documentation, receipts, debit card statements, every unauthorized fraudulent debit attempt (and there are many from this incident, in fact, 3 this week alone, almost 3 months after having stayed there), text messages, video recordings of the interactions with the front desk manager, videos of the interactions with Deputy Cesar, etc., and you are missing the most important thing: the required element of fraudulent intent.

I am documented as to having paid, having personally called the Polk County Sheriff, and even documented as to stating, on video and in writing, that if there was any balance legitimately owed, simply let me know what it is and I will pay it.

Now, like you and Governor DeSantis presently, I haven't been served with any summons or formal notice, so it's not too late to make this quietly go away so nobody is the wiser.

In fact, in the spirit of good faith, I'll even offer your colleagues the same deal I offered State Attorneys Charles Spiteri and Christopher Hill: make it go away and I will happily sign a waiver of liability, hold harmless agreement, and general and mutual release.

Unfortunately for State Attorneys Hill and Spiteri, their arrogance got the better of them and they looked a gift horse in the mouth. They have since found out why that was a mistake. I don't imagine that being an attorney and being beaten by a high school dropout pro se defendant in front of all of your contemporaries, bosses,

and judges is quite the ego boost they were looking for.

As you are already aware, I don't even want to be involved in the current 42 U.S.C.
§ 1983 complaint in federal court, but I've been left with no alternative.

So, if I may make a professional suggestion in the best interest of all parties:

Why don't you do us all a favor and build a bridge here before this unnecessarily
escalates and more taxpayer money is wasted over yet another knowingly
malicious prosecution?

I'm certainly no expert, but I would think that the state prosecutors and Attorney
General have bigger fish to fry like child molesters and protecting the rights of
parents, like me, per your most recent campaign, who have had their "God-given"
parental rights eliminated without due process by the corruption I'm still enduring
in the Osceola County Courthouse.

I, for one, would certainly appreciate it.

In conclusion, I will simply thank you in advance and not engage in the typical
"govern yourselves accordingly" or "I'll see you in court" saber rattling.

Respectfully,

Vincent R. Polisi, II

Pro Se

**Exhibit B1 – Pre-Litigation Letter Pursuant to Fed. R. Evid. 408**
**Confidential settlement communication establishing Defendants' knowledge and opportunity to cure.**

**SUBJECT TO FLORIDA STATUTES §90.408**

**FOR SETTLEMENT PURPOSES ONLY**

**CONFIDENTIAL – NOT FOR FILING – SUBJECT TO PROTECTION**

**UNDER FLA. STAT. §90.408**

**25MAY25**

TO:

Office of the State Attorney, 10th Judicial Circuit

Attn: Brian Haas, State Attorney

P.O. Box 9000, Drawer SA

Bartow, FL 33831

CC:

- Florida Office of the Attorney General
- Risk Management, Polk County
- Judicial Qualifications Commission
- Internal Affairs, Polk County Sheriff's Office

**Re: Confidential Settlement Discussion Pursuant to Fla. Stat. §90.408 – Resolution of Civil Rights and Prosecutorial Misconduct Claims**

Dear Mr. Haas,

This correspondence is submitted in the spirit of resolution and pursuant to Florida Statutes §90.408. It is a formal offer to resolve anticipated civil litigation arising out of not one but two unconstitutional arrests, detention, and malicious

prosecution at the direction of you personally, and your office in Case No. 53-2025-MM-001732-A000-BA.

**Summary of Material Facts:**

Below is a concise chronology of relevant facts that form the basis of anticipated federal and state litigation.

- On May 1, 2025, you personally, your office, and the Florida Attorney General received pre-arrest notice via a document titled "The Olive Branch," providing exculpatory evidence and a warning of improper prosecution.

- Despite this, on May 7, 2025, I was publicly arrested by five Osceola County deputies at a Starbucks across from the alleged incident location—**on a BOLO**—for a 2nd-degree misdemeanor I was demonstrably innocent of.

- This arrest occurred immediately after I completed a divorce trial that same day, that I informed you of, in which I lost custody of my daughter. I spent two days in jail, without bond, despite the charging instrument requesting ROR and $0 bond.

- As you are aware, I was then, again, rearrested five days later due to the failure of your office and the court to pull the capias. Having said that, liability in this matter is likely more attributable to Judge John B. Flynn, who laughingly admitted his "mistake" in the Polk County Courthouse on May 15, 2025, and promised to "fix it".

- As you are also aware, motions to both compel and preserve this video and transcript evidence have already been submitted in the instant case to be issued by order of the Court, for the criminal trial, as well as the 42 USC

2

1983/1985/1986 complaint in federal court styled as, *8:25-cv-01290-TPB-AAS Polisi v. Flynn et al.*

• Judge Flynn ruled unlawfully on an Omnibus Motion without a Traverse filed by the State—admitting it on the record ("She didn't have time")—then was later disqualified after I filed a Motion to Recuse for judicial bias.

• Assistant State Attorney Avalon, acting in a dual role and memorialized in writing as a self-described "protector of Mr. Haas from civil liability," filed a procedurally void Traverse after the hearing. This triggered automatic admission of all facts under Fla. R. Crim. P. 3.190(g)(3).

• In what appears to be a test of either the Defendant's legal illiteracy or the State's procedural disregard, at the initial appearance, arraignment and hearing on The Omnibus, The State provided a manila folder of State self defined "discovery". This discovery, and its contents, have been memorialized via prior motion and notification to the Court, and consisted of a hodge podge of documents with no Bates numbers, no index, no Exhibit numbers, and a CD, also without an index, listing of information contained therein, total kilobytes per recording, or total kilobytes or megabytes of the information contained on the CD.

On this undisclosed, unlabeled audio, the State provided an audio interview of its only material fact witness, James Patterson, General Manager at the Home2Suites in Davenport—who on that recording confirmed:

• I paid the bill in full.

• The transaction was **approved and captured**.

• Running the card again would have caused a **duplicate charge** over $900.

• **I was arrested, twice, for not being double-billed.**

3

•       This information was in the hands of your office and the Polk County Sheriff's Office, who conducted the "interview" of Patterson, via Polk County Detective Ariel Jimenez and recorded it.

**Patterson's Statements Recorded by Polk County Sheriff Deputy, Ariel Jimenez:**

As indicated, contained within the State's own discovery—on an unlabeled audio file with no Bates number or index—is a recorded statement by the State's only material witness, James Patterson, General Manager of Home2Suites in Davenport, Florida. In that interview, Mr. Patterson makes several key admissions:

1. "The 272 was paid..." — Direct confirmation of payment. No theft occurred.

2. "He showed the deputy the app, yeah, he showed the app, **and that the original charge was like, the hold was posted.**" — **The card was authorized and payment was actively processed.** This is not speculation; this is evidence of an active, legitimate transaction. The amount he's referring to is the $467.76 for the stay from February 8-11, 2025, as evidenced by Defendant's previously provided exhibits, Exhibit I.

3. "We explained to him... the bank will not finalize the transaction because you have your card locked." — This is an admission that no fraud occurred. The only "issue" was a precautionary card lock by the customer (Defendant), which is a routine consumer practice to prevent unauthorized or duplicate charges. Further, as previously provided via exhibit and motion, Patterson's statement is factually incorrect. Once a merchant has authorized a transaction, those funds are no longer in the control of the consumer. Transactions are processed one of two ways: 1), Authorization, which results in the card being processed, authorized, and the

4

amount authorized being held in "pending" status waiting further direction by the merchant. If you have ever had a merchant process your card on a free trial, they will generally authorize the card, charge $1, which then shows as "pending" (exactly like the $467.76 in the instant case) and then "falls off" in 3-4 business days (referring to the "free trial" example). In the example of a hotel, as previously provided via motion and exhibit, the funds stay in a pending status, in total control of the merchant, not the consumer, up to 30 days unless otherwise converted to a charge whereby the transaction finalizes and funds are deposited to the merchant's account, or 2), funds charged, captured and transferred to merchant immediately. A "card lock" can only prevent a new transaction. It cannot stop a previously authorized transaction already in "pending" status. This was pure merchant error.

4. "If he either unlocked the card and we finalized the transaction, **it could have shown up twice on his bank account**." — This is a devastating admission that the hotel's own transaction processing would have resulted in a double charge—of $467.76 totaling $935.52, exactly what the Defendant warned about at the scene. His refusal to unlock the card wasn't an act of evasion—it was fiscal responsibility.

5. "At around 8:50am and then Mr. Polisi came to our front desk to inquire on why his card was being ran." — Criminals don't report themselves. They don't initiate payment disputes. They don't walk to the billing desk to resolve a problem. This is conduct wholly inconsistent with criminal intent and undermines any presumption of mens rea under *Florida Statute § 812.014*.

This witness was not hostile. He was cooperative, calm, and unaware his own statements were exculpatory. That makes the truth even more compelling: the State

had access to this evidence before it moved forward. Ignoring it was not incompetence—it was a choice.

Taken together, these statements not only destroy the State's theory of intent to defraud, but they affirmatively prove Defendant's innocence through the State's own witness. There was no concealment. No flight. No deception. There was a payment. A paper trail. And a customer protecting himself from a duplicate charge. All followed by Defendant's own phone call to the Polk County Sheriff's Office and on-site interview with Deputy Cesar.

This isn't theft. This is overzealous prosecution in search of a narrative that doesn't exist.

**Civil Claims Contemplated:**

As you are aware, this conduct gives rise to actionable claims under:

•    42 U.S.C. §1983 (False Arrest, Malicious Prosecution, Due Process Violations)

•    Negligent Hiring and Supervision

•    Violation of Brady/Giglio Obligations

•    Retaliatory Prosecution

•    Emotional Distress / Outrageous Conduct

And even more interestingly…you did it. And its documented by your own "evidence" hand delivered by your own ASA.

You're a highly intelligent, well educated, Bar certified attorney and elected official with significant high level political connections to include Attorney

General James Uthmeier (also included on The Olive Branch pre-arrest email) and I'm sure many others far exceeding his political reach and power. As such, I won't presume to lecture you or endeavor to explain the shockwaves of this story going public after it gets recorded at the federal courthouse with all of the media parasites monitoring that looking for their next "shock and awe" "government corruption" soundbite. A high school dropout pro se defendant getting a sitting judge disqualified is more than enough to get the media's interest and attention.

Layer on the Sheriff Grady Judd implications, connect it to you, the fact that you brought in a "fixer" to insulate you from civil liability on, of all things, a 2nd degree misdemeanor (all documented by Assistant State Attorney Avalon's own emails and submissions to the Court), documented notification pre-arrest to both you and Attorney General Uthmeier…and it doesn't take a rocket scientist to put two and two together.

The spider web of state actors and government agencies involved in this coverup, on a 2nd degree misdemeanor, based on a hotel bill that I paid, proved I paid, Hilton proved I paid (via their own receipts and testimony of their own employee in front of Deputy Jimenez as provided in the State's "discovery") and we are tap dancing all over RICO.

Now, to be clear, this is not a threat of exposure. While the prospect of that is certainly entertaining, I won't lie…I couldn't personally care less about media exposure, nor do I have the psychological or emotional bandwidth to engage in the typical wronged party behavior of wanting to burn the other party to the ground.

I just want to be made as whole as I can be given the circumstances and crawl back

under the rock your government associates dragged me out from underneath, never to be heard from again.

**Settlement Offer:**

To resolve this matter pre-suit, I am prepared to accept the following terms:

1.    Compensation in the amount of $983,787.00. This amount is intended solely to compensate for reputational damage, emotional distress, and personal harm resulting from the unlawful arrests, malicious prosecution, and deprivation of constitutional rights under 42 U.S.C. §1983, and is not punitive in nature.

2.    Full dismissal with prejudice of all charges in Case No. 53-2025-MM-001732-A000-BA

3.    Expungement assistance and judicial declaration of factual innocence

4.    Withdrawal of the pending Motion for Declaratory Judgment in federal court naming Brian Haas, Judge John Flynn, and Sheriff Grady Judd

5.    Mutual release of claims

6.    No admission of liability by any party

For clarity and judicial economy, a copy of this correspondence—minus privileged financial details—has been filed under seal with the United States District Court for the Middle District of Florida as part of ongoing federal litigation in *Polisi v. Flynn et al., Case No. 8:25-cv-01290-TPB-AAS.*

This ensures both procedural preservation and permanent judicial record of the Defendant's willingness to resolve this matter prior to full exposure of facts, filings, and depositions.

**JUSTIFICATION OF ECONOMIC HARM:**

The settlement figure is not speculative or punitive. It reflects quantifiable economic potential and reputational harm substantiated on the record. During a prior false arrest and criminal prosecution in Osceola County *(Case No. 2023-MM-2683)*, I personally addressed the Court under oath at the Faretta hearing before Judge Stephania Jancewicz. In that proceeding, I explained I did not want an attorney and did not qualify for indigent counsel because, despite the unlawful detention and seizure of my assets, I had already recovered over $100,000 in net revenue within weeks of release of the unlawful 9 day incarceration without bond.

This testimony is a matter of public record. That record rebuts any presumption that this claim is inflated or opportunistic. It demonstrates a history of resilience, measurable earning capacity, and direct reputational impairment caused by criminal proceedings which are now verifiably defective.

This is not a lottery ticket. It's a documented, economic loss—backed by a courtroom transcript and multiple days of unconstitutional incarceration.

To reiterate, as a sign of good faith and interest in resolution, Defendant is prepared to withdraw the federal Motion for Declaratory Judgment naming Mr. Haas, Judge Flynn, and Sheriff Judd, contingent upon a full and final civil settlement.

**Prior Record of Prosecutorial Misconduct – On Record Dismissal:**

It is also worth noting that this is not my first experience confronting prosecutorial misconduct—nor is it the first time I prevailed. As you are aware, in Case No. 2023-MM-2683 (Osceola County), after enduring nine days in jail without bond, I called an Emergency Richardson hearing during which I exposed that the

prosecution had withheld exculpatory evidence in the form of Saint Cloud Police body-camera footage. That evidence, once reviewed, confirmed my innocence, and the case was subsequently dismissed.

This isn't conjecture. It's a documented pattern of abuse.

Two counties. Two false arrests. Two prosecutors.

And now a second federal complaint under 42 U.S.C. §1983.

This offer shall remain open for ten (10) business days from the date of receipt. If not accepted, I will proceed with federal litigation and public filing of an expanded civil complaint.

**Wiring Instructions:**

Written acceptance may be provided via official correspondence from your office or counsel of record and shall trigger the immediate transmission of secure wiring details.

Payment shall be directed to the following entity:

Payee Entity:

Vinfinity, Inc. (as Trustee for Vinfinity Trust)

EIN (Vinfinity, Inc.): 88-1542351

EIN (Vinfinity Trust): 99-6525355

**Designation Note:**

Vinfinity Trust is a structured litigation trust created exclusively for legal expense tracking, reputational repair, and ongoing civil recovery. This structured designation reflects the intended management of settlement funds.

Verification and documentation available upon request.

Absolutely no checks — personal, business, or cashier's — will be accepted. Settlement must be executed exclusively via wire transfer. Any attempt to issue a paper instrument will be returned, logged, and deemed non-compliant with the terms of resolution.

To be clear, this is not the first time Attorney General James Uthmeier has received pre-arrest exculpatory notice—nor the first time it has been deliberately ignored.

He was copied on The Olive Branch correspondence as early as May 1, 2025, prior to the **first** of **two separate arrests within five days** stemming from a single baseless prosecution in Polk County. Separately, he was notified in 2025 in connection with another pending §1983 federal complaint currently before the Middle District of Florida, in which Governor Ron DeSantis—despite having formal notice—also took no corrective action. (See Polisi v. DeSantis et al., Case No. 6:25-cv-00256-WWB-LHP.)

This places Attorney General Uthmeier as the common supervisory link in the current matter, involving two arrests within five days, and as a subsequent recipient of notice of an additional §1983 complaint stemming from a prior unlawful arrest in a separate county—each marked by constitutional violations, judicial

misconduct, and the suppression of exculpatory evidence—all of which collectively point to systemic failure and willful indifference..

At best, this is systemic negligence. At worst, it is coordinated indifference at the highest legal level in the State of Florida.

**Conclusion:**

This offer reflects not only a desire to resolve these issues efficiently, but a recognition of the irreparable harm caused. You have the opportunity to prevent further exposure, depositions, and evidentiary discovery of what is already an extraordinary failure of oversight that risks cascading consequences for all involved unless addressed swiftly, decisively, and discretely.

Let's not allow an evidentiary corpse to become a political flashpoint.

You can bury this quietly—with a wire transfer and a mutual release.

Should you wish to discuss this further, I am available immediately.

Sincerely,

Vincent R. Polisi, II

407-928-0961

8297 Champions Gate Boulevard, #113

Champions Gate, FL 33896

*Please note that a copy of this correspondence—excluding privileged financial identifiers—has already been filed under seal in the United States District Court for the Middle District of Florida as part of the federal proceedings in Polisi v. Flynn et al., 8:25-cv-01290-TPB-AAS.*

*Legal Disclaimer – Settlement Communications Pursuant to Fla. Stat. §90.408*

*This correspondence is submitted exclusively pursuant to Florida Statutes §90.408 and relevant federal standards governing settlement discussions in anticipation of litigation. It reflects a bona fide attempt to resolve pending and prospective civil claims through protected communication.*

*This offer is made in writing, references active and anticipated legal proceedings, and is filed under seal in federal court to preserve judicial integrity, not to apply extrajudicial pressure. It is not conditioned on the suppression of criminal evidence, designed to obstruct justice, nor is it contingent upon the forbearance of lawful prosecution. No part of this document constitutes a threat, demand, or improper inducement under state or federal law.*

*The intent is transparent: to facilitate resolution of civil rights violations through legal process, and to avoid unnecessary litigation, reputational harm, or public escalation. All parties remain free to accept, decline, or engage through counsel.*

**Supplemental Judicial Notice submitted in Polisi v. DeSantis, et al., documenting
ongoing retaliation and forum closure.**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VINCENT R. POLISI, II,
Plaintiff,

v.

RON DESANTIS, et al.,
Defendants.

Case No.: 6:25-cv-00256-WWB-LHP
_____/

## SUPPLEMENTAL JUDICIAL NOTICE OF RETALIATORY STATE

## CONDUCT IN PARALLEL PROCEEDINGS AND PRESERVATION OF

## FEDERAL ACCESS-TO-COURTS CLAIMS

COMES NOW Plaintiff, Vincent R. Polisi, II, appearing pro se, and
respectfully files this Supplemental Judicial Notice to place this Court on
formal notice of escalating retaliatory conduct by Defendants, including
named parties in this case, occurring in the parallel state criminal case
styled State v. Polisi, Case No. 2025-MM-001732-A000-BA, currently on
review before the Florida Sixth District Court of Appeal, Case No.
6D2025-1416.

1. Purpose of This Filing:

Plaintiff does not seek intervention or injunctive relief at this time. Instead, this filing:

• Preserves the federal record regarding new, post-federal-suit retaliation by Defendants.

• Documents deliberate interference with Plaintiff's pro se access to courts and defense rights.

• Confirms ongoing exhaustion of state remedies as required under §1983, §1985, and §1986.

2. Relevant Facts:

Following the filing of this federal action under 42 U.S.C. §§1983, 1985, and 1986, the following retaliatory events occurred:

• July 2, 2025: Judge Stacie Kaylor (a named Defendant herein) conducted an unexplained, second Faretta hearing in the pending state case, despite Plaintiff's already-established and documented right to pro se representation under Faretta v. California, 422 U.S. 806 (1975).

• Plaintiff had already been representing himself for months, including:

• Filing over 40 motions.

- Successfully disqualifying prior Judge John B. Flynn for bias and misconduct.

- Defending against prosecutorial misconduct, including due process violations now documented in this federal case.

- This second Faretta hearing was initiated only after Plaintiff:

- Exposed Judge Kaylor's prior Nolle Prosequi and ONI mischaracterization trap,

- Named her as a Defendant in this federal case,

- Filed new complaints in both the 6th DCA and federal court.

There is no record evidence suggesting incompetence or disruption by Plaintiff; instead, the re-litigation of Faretta rights only arose after Plaintiff exercised constitutional rights that exposed judicial and prosecutorial misconduct.

3. Attached Exhibits for Judicial Notice:

- Exhibit A: Plaintiff's Supplemental Judicial Notice of Pretextual Faretta Revocation Attempt Amid Federal Exposure and Pattern-Based Retaliation filed in the Sixth District Court of Appeal, Case No. 6D2025-1416.

3

• Exhibit B: Plaintiff's Notice Regarding Compliance with Florida Rules of Criminal Procedure and Preservation of Objections to Pretextual Faretta Maneuvers filed in the same appellate proceeding.

4. Legal Context:

This pattern of retaliatory conduct implicates well-established federal protections, including:

• Faretta v. California, 422 U.S. 806 (1975) (right to self-representation).

• Procunier v. Navarette, 434 U.S. 555 (1978) (retaliation for exercise of constitutional rights).

• Bounds v. Smith, 430 U.S. 817 (1977) (right of access to courts).

• Lewis v. Casey, 518 U.S. 343 (1996) (government interference with access to courts).

• Procup v. Strickland, 792 F.2d 1069 (11th Cir. 1986) (limits on procedural restrictions against litigants).

These federal constitutional violations are actively compounding due to Defendants' continued retaliation and interference with court access, now escalating in direct response to Plaintiff's filings in this federal action.

5. No Waiver of Rights:

This filing does not waive any claim, remedy, or procedural right, including but not limited to:

- • Future emergency relief.

- • Amendments to pleadings.

- • Sanctions requests.

- • Additional claims under §1983, §1985, or §1986.

Conclusion:

This Supplemental Judicial Notice is submitted solely to preserve the federal record regarding ongoing retaliation and access-to-courts violations, to provide clear evidence of state-based escalation after the initiation of this federal action, and to demonstrate Plaintiff's continued exhaustion of available state remedies under Younger v. Harris and related doctrines.

Respectfully submitted this 3rd day of July, 2025.

/s/ Vincent R. Polisi, II
Vincent R. Polisi, II
Plaintiff, Pro Se

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been electronically filed via CM/ECF and will be served upon all parties who have appeared through the Court's electronic filing system. For defendants not yet served, service will occur following issuance of summonses pursuant to Fed. R. Civ. P. 4.

## Rule 4(m) Compliance Certification

Plaintiff certifies that this Judicial Notice to the Amended Complaint is filed within the extension period currently pending via motion before the Court pursuant to Rule 4(m), and that service of summons and complaint on all defendants—both originally named and newly added—is underway and will be effected within the timeframe authorized by the Court.

6

Plaintiff further certifies that a formal request for service by U.S. Marshal

pursuant to Fed. R. Civ. P. 4(c)(3) has already been made and is also

pending before the Court.


**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with formatting and font requirements

under:

• Rule 1.08 of the Local Rules of the Middle District of Florida,

and

•Judge Berger's Standing Order (6:21-mc-3-Orl-78).

This document was prepared using 14-point Arial font, double-spaced, with

1" margins and page numbering bottom center.


/s/ Vincent R. Polisi
Vincent R. Polisi
Plaintiff, Pro Se

**IN THE DISTRICT COURT OF APPEAL OF FLORIDA
SIXTH DISTRICT**

**VINCENT POLISI,**
    Petitioner,
v.
**HON. STACIE KAYLOR,**
County Court Judge, Tenth Judicial Circuit,
Respondent,

and

**STATE OF FLORIDA,**
    Respondent.

Case No.: 6D2025-1416
L.T. Case No.: 53-2025-MM-001732-A000-BA
_____/

## SUPPLEMENTAL JUDICIAL NOTICE OF PRETEXTUAL FARETTA

## REVOCATION ATTEMPT AMID FEDERAL EXPOSURE AND PATTERN-

## BASED RETALIATION

COMES NOW the Defendant, **Vincent R. Polisi, II**, appearing pro se, and hereby submits this Emergency Judicial Notice to place the record on alert regarding a pretextual and retaliatory **second Faretta hearing**, conducted on July 2, 2025, without any triggering legal basis—**months after** Faretta rights were previously granted, exercised, and documented through extensive procedural litigation, including:

•    Over 40 pro se motions filed,

•    Disqualification of Judge John B. Flynn via a Verified Motion for Bias and Misconduct,

•    Simultaneous litigation of this case in federal court under 42 U.S.C. § 1983, § 1985, and § 1986 (Case No. 6:25-cv-00256-WWB-LHP),

•    Multiple appellate filings before the Sixth District Court of Appeal (Case No. 6D2025-1416),

•    Strategic invocation of constitutional defenses supported by evidentiary record.

This second Faretta inquiry **immediately followed**:

1.    Petitioner's exposure of the **ONI/VOP trap** intended to bypass jury trial,

2.    Petitioner's rejection of a **nolle prosequi offer** laced with unconstitutional conditions,

3.    The filing of a **Supplemental Writ of Prohibition** in the 6th DCA exposing the above,

4.    The **naming of the presiding judge, Hon. Stacie Kaylor**, as a defendant in federal civil rights litigation for forum closure, concealment of prosecutorial conflict, and due process violations.

There exists no legal or factual basis for re-conducting the Faretta inquiry already completed on the record by now-disqualified Judge John B. Flynn.

If the State or lower court seeks to reopen Faretta, it implicitly concedes Flynn's rulings—including his improper dismissal of OMNIBUS I—are invalid and must be vacated, as previously stated and moved for by the Petitioner.

Notably, Petitioner filed OMNIBUS I raising multiple independent grounds for dismissal—five of which are not subject to judicial discretion. The State failed to file a traverse before the scheduled hearing. At that hearing, Judge Flynn summarily denied OMNIBUS I. Petitioner immediately objected on the record to the State's failure to traverse, to which Judge Flynn infamously responded, "She didn't have time," and overruled the objection[1].

---

[1] Judge Kaylor has subsequently denied motions compelling production of both the courtroom video and the transcript of this exchange in an attempt to conceal the misconduct of now disqualified Judge John B. Flynn and the requirement to dismiss the lower tribunal case.

Judicial Order Titled, "ORDER DENYING MULTIPLE DEFENSE MOTIONS",
Filing # 225315768 E-Filed 06/16/2025 11:22:35 AM,

Order 9. EMERGENCY MOTION TO COMPEL PRODUCTION OF TRANSCRIPT- Denied.

Order 30. MOTION TO PRESERVE AND PRODUCE COURTROOM VIDEO EVIDENCE- Denied. "This pertains to a separate matter and not the underlying criminal case." ~ However, it does not pertain to a separate matter and does, in fact, pertain to the underlying criminal case because it exposes judicial misconduct and the Petitioner's objection to no traverse filed by the State, Judge Flynn's flippant commentary of, "She didn't have time.", and his overruling of the objection to not traverse, which would have been dispositive for the underlying tribunal case and not wasted this Court's time.

Nine days after the hearing, ASA Victoria Avalon, Director of Appellate and Civil Litigation and a named Defendant in the instant federal action— belatedly filed a traverse in an overt attempt to retroactively stop gap the lack of a filed traverse post hoc. Petitioner immediately moved to strike the untimely traverse and reinstate OMNIBUS I. Upon reassignment of the case, Judge Stacie Kaylor denied both the motion to strike and the motion to reinstate, despite inheriting a case now infected by disqualifying judicial misconduct. In this light, the recent re-administration of the Faretta inquiry…without explanation…appears to be a pretextual maneuver designed to undermine Petitioner's pro se status and immunize prior misconduct from appellate or federal scrutiny. Any assertion that Petitioner lacks legal competence is directly contradicted by the record and timing of events—namely, that Petitioner successfully disqualified the original judge, exposed procedural irregularities, and preserved all objections in real time without the benefit of counsel. Judge Kaylor has subsequently denied any and all attempts at preservation of the record for use in the lower tribunal case, as well as for appellate oversight, via her ORDER DENYING MULTIPLE DEFENSE MOTIONS, Filing # 225315768 E-Filed 06/16/2025 11:22:35 AM.

The instant case in the lower tribunal notwithstanding, the genesis of the instant case, *Polisi v. DeSantis, et al.*, was *State v. Polisi*, 2023-MM-2683 in

Osceola County in which Petitioner represented himself pro se and was successful in securing a dismissal at an Emergency Richardson Hearing where he exposed known exculpatory evidence in the form of body-cam footage withheld by Assistant State Attorneys Charles Spiteri and Christopher Hill, respectively.

**LEGAL BASIS**

Under *Faretta v. California*, 422 U.S. 806 (1975), and its progeny, a defendant's waiver of counsel is not subject to arbitrary reassessment unless:

- There is a bona fide **question of competency** (not present here),

- The defendant **requests a change in representation status** (not requested),

- A new criminal charge arises (none has),

- Or there is a **documented abuse of Faretta rights**, such as disruption, bad faith, or repeated frivolity (no such findings exist, nor were any entered). Despite prior filed demands, the lower tribunal has refused to provide any specific findings of frivolousness or vexatiousness or incompetence by Petitioner. In fact, the record indicates the opposite.

Instead, this second Faretta hearing was clearly pretextual and **politically reactive**—a maneuver designed to undercut the Defendant's right to self-representation now that the prosecution and presiding judge are under formal federal and appellate scrutiny.

**The timing exposes motive.**

Only after:

• The ONI mischaracterization was exposed,

• The nolle prosequi trap was rejected,

• Federal and appellate records named Judge Kaylor and State Attorney Brian Haas,

• The federal filing incorporated DOJ-level commentary and demonstrative exhibits linking Governor DeSantis to judicial appointments and prosecutorial misconduct,

• And, notably, Petitioner's filing related to United States Attorney General Pam Bondi's recent quote:

"Nobody is above the law, not even a judge."

~ United States Attorney General Pam Bondi,

April 25, 2025, ABC News

6

…did the Court suddenly express renewed interest in revisiting Defendant's competency under *Faretta*. This Court had no issue with pro se representation until it became inconvenient to the State's retaliatory agenda.

This marks the **second time** the State has attempted to strip the Defendant of pro se access:

•    First via a **blanket revocation of filing rights** (now pending in the Sixth DCA),

•    And now via a **stealth Faretta maneuver** clearly designed to reclassify the Defendant as incompetent or improperly self-represented— *not based on any new fact or conduct*, but based on increased political liability.

This is not a coincidence. It is **a pattern**.

## LEGAL AUTHORITY

This retaliatory re-litigation of Faretta rights—absent any triggering legal condition—violates well-settled constitutional principles. In *Faretta v. California*, 422 U.S. 806 (1975), the U.S. Supreme Court held that a criminal defendant has a fundamental Sixth Amendment right to self-

7

representation once knowingly and voluntarily invoked. That right cannot be stripped arbitrarily, or as a punitive response to the exercise of protected legal activity.

Similarly, in *Procunier v. Navarette*, 434 U.S. 555 (1978), the Court reaffirmed that retaliation against an individual for exercising constitutional rights—especially in the context of access to courts—states a valid claim for violation of § 1983.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Court held that prisoners and pro se litigants must be given "meaningful access to the courts," and in *Lewis v. Casey*, 518 U.S. 343 (1996), the Court clarified that this right prohibits state actors from obstructing or impairing a pro se litigant's ability to litigate.

Additionally, in *Procup v. Strickland*, 792 F.2d 1069 (11th Cir. 1986), the Eleventh Circuit clarified that even in cases of alleged frivolousness or abuse of process, a pro se litigant may not be barred from access to the courts absent specific findings, prior notice, and a meaningful opportunity to respond or cure the alleged conduct. The decision explicitly holds that

access restrictions cannot be a blanket sanction absent due process and a clear showing of obstruction or bad faith.

Here, the record reflects the exact opposite: there were no findings of frivolity, no prior notice, and not only no appearance ever before the presiding judge, Judge Stacie Kaylor, but no opportunity to cure before the revocation of filing rights or the renewed Faretta inquiry. Rather, Petitioner was penalized for lawfully exercising constitutional and procedural rights— just as Procup warns courts not to do.

These precedents collectively prohibit the type of retaliatory Faretta manipulation at issue here—especially when the pro se litigant is actively engaged in pending federal and appellate litigation against the very actors now attempting to undermine that representation.

**Conclusion and Preservation of Record:**

Defendant objects to any re-litigation of *Faretta* rights in the absence of clear legal basis or evidentiary change in circumstance. Defendant reserves the right to seek emergency injunctive relief in federal court if the Court attempts to use this second Faretta inquiry as a basis to revoke pro

se status, delay proceedings, or shift blame for its own procedural missteps and federal exposure.

This is no longer a question of procedural irregularity. It is a matter of retaliatory suppression of protected rights, and the appellate and federal records now reflect it.

Respectfully submitted this 2nd day of July, 2025.

/s/ Vincent R. Polisi, II
Vincent R. Polisi, II
Petitioner, Pro Se

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court via the Florida Courts E-Filing Portal on this 2nd day of July 2025, and served upon all counsel of record, including the Office of the State Attorney, via electronic service.

/s/ Vincent R. Polisi, II
Vincent R. Polisi, II
Petitioner, Pro Se

**VERIFICATION**

I, VINCENT R. POLISI, II, declare under penalty of perjury that the

foregoing Supplemental Judicial Notice and all factual matters contained

herein are true and correct to the best of my knowledge and belief,

pursuant to Florida Statutes § 92.525.

Executed on this 2nd day of July, 2025.

/s/ Vincent R. Polisi, II
Vincent R. Polisi, II
Petitioner, Pro Se


**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 9.045, this document has been prepared using Arial 14-

point font, double spaced, with 1" margins and page numbering bottom

center. Further, it complies with the word count limits and is under 10,000

words.

/s/Vincent R. Polisi, II
Vincent R. Polisi, II
Petitioner, Pro Se

IN THE DISTRICT COURT OF APPEAL OF FLORIDA
SIXTH DISTRICT

VINCENT R. POLISI, II,
       Petitioner,

v.

HON. STACIE KAYLOR,
County Court Judge, Tenth Judicial Circuit,
       Respondent,

and

STATE OF FLORIDA,
       Respondent.

Case No.: 6D2025-1416
L.T. Case No.: 53-2025-MM-001732-A000-BA


**NOTICE REGARDING COMPLIANCE WITH FLORIDA RULES OF**

**CRIMINAL PROCEDURE AND PRESERVATION OF OBJECTIONS TO**

**PRETEXTUAL FARETTA MANEUVERS**


COMES NOW, Petitioner Vincent R. Polisi, II, appearing pro se, and

respectfully submits this Notice to place this Court and all parties on record

as follows:

      1.    Petitioner affirms that he is fully aware of his obligations to

comply with the Florida Rules of Criminal Procedure and intends to

continue fully complying with said Rules throughout all proceedings, both in the lower tribunal and in this Court.

2.      Petitioner expressly preserves the right to contemporaneously object to, and seek leave to correct, any inadvertent procedural or technical omissions that may arise, consistent with both state and federal standards protecting pro se litigants from unfair disadvantage based on form over substance without waiving any substantive rights or defenses.

3.      Petitioner further preserves all objections to the retaliatory, pretextual re-litigation of Faretta rights, as detailed in prior filings with this Court, including the pending Supplemental Judicial Notice of Pretextual Faretta Revocation Attempt Amid Federal Exposure and Pattern-Based Retaliation.

4.      Petitioner asserts that the record clearly reflects ongoing good-faith compliance with all procedural rules and confirms that any attempt to later weaponize hyper-technicalities or procedural traps to undermine pro se status will be challenged as unconstitutional retaliation, bad faith, and a denial of due process under the state and federal constitutions.

This Notice is submitted solely for the purpose of preserving the record and ensuring clarity of Petitioner's legal position.

Respectfully submitted,
July 3, 2025

/s/Vincent R. Polisi, II
Vincent R. Polisi, II
Petitioner, Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed

with the Clerk of Court via the Florida Courts E-Filing Portal on this 3rd day

of July 2025, and served upon all counsel of record, including the Office of

the State Attorney, via electronic service.

/s/ Vincent R. Polisi, II
Vincent R. Polisi, II
Petitioner, Pro Se

## VERIFICATION

I, VINCENT R. POLISI, II, declare under penalty of perjury that the

foregoing Supplemental Judicial Notice and all factual matters contained

herein are true and correct to the best of my knowledge and belief,

pursuant to Florida Statutes § 92.525.

Executed on this 3rd day of July, 2025.

/s/ Vincent R. Polisi, II
Vincent R. Polisi, II
Petitioner, Pro Se

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 9.045, this document has been prepared using Arial 14-point font, double spaced, with 1" margins and page numbering bottom center. Further, it complies with the word count limits and is under 10,000 words.

/s/Vincent R. Polisi, II
Vincent R. Polisi, II
Petitioner, Pro Se

**Exhibit D – CashApp Statement Showing Hotel Charge**
**Debit transaction corroborating payment of alleged "stolen" hotel funds used in criminal prosecution.**

# Hilton
Feb 8 at 4:51 PM

# $179.61

## Updated transaction totals

| | | |
|---|---|---|
| ● | Feb 8 at 4:51 PM | $467.76 |
| ● | Mar 10 at 5:52 PM | $179.61 |

## Transaction details

✓ **Complete**
Purchase from Hilton

$ **Payment method**
Cash App Card 9667
In store

🗒 **On statement as**
HOME2SUITES BY HILTON DAV

◉ **Location**
Davenport, FL

Block, Inc.
1955 Broadway, Suite 600
Oakland, CA 94612
(800) 969-1940

NMLS #: 942933

cash.app

# HOME2
## SUITES BY HILTON

| Name and Address | Hotel Address |
|---|---|
| POLISI, VINCENT<br>5020 BESSIE CT<br>ST CLOUD, FL 34772 | 164 THRIVE ROAD<br>DAVENPORT, FL 33896 |

**HOME2 SUITES BY HILTON ORLANDO SOUTH DAVENPORT**

| | |
|---|---|
| Room | 436/NKJ |
| Arrival Date | 02/08/25 |
| Departure Date | 02/11/25 |
| Adult/Child | 1/0 |
| Room Rate | $192.67 |
| Rate Plan | L-H1P |
| Honors # | 2154470104 |
| Airline: | |

Confirmation #   94633766

02/11/25   PAGE   1

Reservations
www.home2suites.com or
1-877-6HOME02

| DATE | REFERENCE | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 02/08/25 | 1314294823 | County Tax | $9.75 |
| 02/08/25 | 1567537403 | GUEST ROOM | $195.00 |
| 02/08/25 | 193092978 | Sales Tax | $13.65 |
| 02/09/25 | 170249665 | GUEST ROOM | $178.00 |
| 02/09/25 | 1859806188 | Sales Tax | $12.46 |
| 02/09/25 | 515073880 | County Tax | $8.90 |
| 02/10/25 | 1425091156 | GUEST ROOM | $205.01 |
| 02/10/25 | 1797234273 | Sales Tax | $14.35 |
| 02/10/25 | 670705138 | County Tax | $10.25 |
| 02/11/25 | 1011026939 | County Tax | ($9.75) |
| 02/11/25 | 1191057038 | Sales Tax | ($12.46) |
| 02/11/25 | 1381927941 | County Tax | ($10.25) |
| 02/11/25 | 1416895040 | GUEST ROOM | ($205.01) |
| 02/11/25 | 147096738 | GUEST ROOM | ($178.00) |
| 02/11/25 | 1482020579 | Sales Tax | ($13.65) |
| 02/11/25 | 1614850378 | County Tax | ($8.90) |
| 02/11/25 | 1627535297 | Sales Tax | ($14.35) |
| 02/11/25 | 478837501 | REFUND-VISA-9667 | $179.61 |
| 02/11/25 | 550243796 | ************9667 | ($179.61) |
| 02/11/25 | 67616414 | GUEST ROOM | ($195.00) |
| | | ** BALANCE ** | $0.00 |

*Exhibit E – Zero-Balance Receipt from Home2 Suites / Hilton Hilton-issued document proving no outstanding balance and full resolution of civil billing matter.*

The on-line eFolio is a courtesy informational service, subject to Privacy Policy and Site Usage; actual folio kept in hotel records.